UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARK TICER,

        Plaintiff,

    v.

GREGORY YOUNG, et al.,

        Defendants.

Case No.  16-cv-02198-KAW

**ORDER GRANTING MOTION TO DISMISS**

Re: Dkt. No. 45

     Plaintiff Mark Ticer brings the instant suit against Defendants Gregory Young and the Board of Trustees of the California State University ("CSU"), alleging violations of Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973. (First Amended Compl. ("FAC"), Dkt. No. 39.)  Pending before the Court is Defendants' motion to dismiss Plaintiff's amended complaint.  (Defs.' Mot., Dkt. No. 45.)  Upon consideration of the moving and responding papers, as well as the arguments presented at the June 1, 2017 motion hearing, and for the reasons set forth below, the Court GRANTS Defendants' motion to dismiss.

## I.    BACKGROUND

### A.    Factual Background

     In 2000, Plaintiff was accepted as a student at San Jose State University ("SJSU").  (FAC ¶ 5.)  Plaintiff has a disability related to the fear of people, which causes him serious emotional problems.  (FAC ¶ 7.)  In Mary 2001, Plaintiff registered with the SJSU Disability Resource Center ("DRC").  (FAC ¶ 6.)  The DRC determined that Plaintiff was eligible to participate in the Chemical Engineering Program as a disabled student, and that Plaintiff was eligible for extended time on exams as an accommodation.  (*Id.*)  The DRC also issued Plaintiff a DRC identification card to work out disability-related needs with his professors.  (*Id.*)

During the Fall 2003 semester, Plaintiff was enrolled in Defendant Young's ChE190 course. (FAC ¶ 11.) Defendant Young was the BCME Department Associate Chair, as well as Plaintiff's major advisor. (FAC ¶ 10.) Defendant Young was also the only professor who taught mandatory engineering courses, such as ChE190 and ChE160A. (FAC ¶¶ 10, 17.) Because of his disability, Plaintiff was occasionally unable to turn in his homework during the first five minutes of class, as required by Defendant Young. Although Plaintiff met with Defendant Young and explained his disability, Defendant Young refused to accept the late homework assignments. (*Id.*) Defendant Young also refused to accept homework by e-mail. (FAC ¶ 12.) On one occasion, Defendant Young refused to allow Plaintiff to make up exams, even after Plaintiff explained he had missed an exam due to his disability. (FAC ¶ 13.) Instead, Defendant Young told Plaintiff he should change his major.

On December 16, 2003, Plaintiff met with the BCME Department Chair, Dr. Allen, to ask if she would support an incomplete ("I") grade in Defendant Young's class, to accommodate his disability. (FAC ¶ 14.) Plaintiff explained his disability, but Dr. Allen allegedly responded by telling Plaintiff that the engineering program would be too difficult for Plaintiff with these problems, and suggesting he change his major. (*Id.*) That day, Dr. Allen sent Plaintiff a letter stating that she understood Plaintiff's situation was stressful, and advising that he seek professional help. (FAC ¶ 15.) Rather than suggest that Plaintiff seek academic counseling with the BCME Engineering Department counselors, Dr. Allen suggested Plaintiff seek general academic counselors outside of the BCME department, which Plaintiff asserts is a "common procedure for students seeking a new major." (*Id.*)

Plaintiff did not pass the ChE190 course, and re-enrolled in Defendant Young's ChE190 course for the Fall 2004 semester. (FAC ¶¶ 17-18.) Plaintiff again asked Defendant Young to accept his late homework or to allow him to deliver homework by e-mail, but Defendant Young responded with anger and criticism. (FAC ¶ 18.) Defendant Young also tried to intimidate and coerce him into discontinuing his engineering studies, causing him emotional distress. (*Id.*) Plaintiff was unable to complete the ChE190 course. (*Id.*)

In the Fall 2006 semester, Plaintiff again enrolled in Defendant Young's ChE190 course.

2

(FAC ¶ 19.)  When Plaintiff asked Defendant Young to accommodate him by granting him an "I" grade to extend the time for him to complete the course, Defendant Young responded with anger and criticism, telling Plaintiff to change his major.  (*Id.*)  During a 2006 academic advising session, Defendant Young also told Plaintiff that his previously completed engineering classes were going to expire and that he would need to repeat those courses or change his major.  (FAC ¶ 20.)  Plaintiff later learned that the BCME Department could have granted him an alternative to repeating these courses, but was never given those alternatives by Defendant Young.  (*Id.*)

In January 2007, Defendant Young and Dr. Allen were in a BCME Department faculty meeting to discuss Plaintiff's grade point average dropping below 2.0 in the Junior Core Chemical Engineering Courses.  (FAC ¶ 21.)  The drop was due to Plaintiff receiving a D in Defendant Young's ChE190 course.  Despite this, the faculty allowed Plaintiff to enroll in ChE160A, a higher-level course taught only by Defendant Young, without providing for any disability-related accommodations.  (FAC ¶¶ 21-22.)

Plaintiff enrolled in Defendant Young's ChE160 course in Spring 2007.  (FAC ¶ 23.)  Plaintiff's attempts to receive accommodations were again met with anger and criticism, and Plaintiff did not finish the course.  (*Id.*)  Defendant Young also told Plaintiff he would have to repeat ChE190.  (FAC ¶ 24.)  Accordingly, Plaintiff enrolled in Defendant Young's ChE190 course in the Fall 2007 semester.  (FAC ¶ 25.)  Again, Plaintiff's attempts to receive accommodations were met with anger and criticism, and Plaintiff did not finish the course.  (*Id.*)

From 2008 to 2009, Defendant Young was on sabbatical.  Plaintiff was able to complete additional courses, but Defendant Young's impending return caused him to experience increased emotional distress.  (FAC ¶ 26.)  Plaintiff enrolled in Defendant Young's ChE190 course in the Fall 2009 semester, but was only able to attend the course for a short period due to his emotional distress related to Defendant Young.  (FAC ¶ 27.)  Plaintiff eventually decided not to enroll in that semester.  Plaintiff returned for the Spring 2010 semester, enrolling in two courses; Plaintiff, however, continued experiencing emotional distress related to Defendant Young, resulting in Plaintiff being unable to complete the two courses.  (FAC ¶ 28.)  At the time, Plaintiff believed the emotional distress was the result of his disability or medication problems.  (*Id.*)  Plaintiff again

experienced emotional distress related to Defendant Young prior to the Fall 2010 semester, and was unable to attend. (FAC ¶ 29.)

In January 2011, Plaintiff received a medical leave of absence from Dr. Stacy Gleixner, the Associate Chair of the BCME Department. (FAC ¶ 30.) Plaintiff intended to return for the Fall 2011 semester, but decided to seek an extension due to his emotional distress. On September 20, 2011, Plaintiff tried to extend his medical leave, which required Defendant Young's signature, as Defendant Young was now the BCME Department Chair. (FAC ¶ 31.) Defendant Young became angry and said he would not sign the medical leave extension because he was not a psychiatrist. (*Id.*) Plaintiff took Defendant Young's statement to mean that he could not have a psychiatric condition in order to be authorized medical leave, and felt coerced and intimidated by Defendant Young's tirade, which targeted his shortcomings as a disabled student. (*Id.*)

Five minutes later, Plaintiff reported the incident to Dr. Allen. (Compl. ¶ 32.) Plaintiff states that he was in emotional distress, and informed Dr. Allen that Defendant Young was hostile and that Defendant Young refused to sign the medical leave because he was not a psychiatrist. Dr. Allen did not, however, "indicate to Plaintiff that [Defendant] Young's conduct was unusual in any way." (*Id.*) Dr. Allen instead wrote, "dept. advisor and chair prefer not to sign" on the bottom of the medical leave request. Plaintiff asserts that this response "had the effect of concealing [Defendant] Young's wrongful conduct from Plaintiff," causing Plaintiff to believe that Defendant "Young's conduct must have been reasonable and entirely within his rights." (*Id.*) This resulted in Plaintiff continuing to believe that his emotional distress was the result of his disability and medication problems. (*Id.*) Plaintiff further asserts that his report to Dr. Allen of Defendant Young's conduct "implied an urgent need for an accommodation," but that Dr. Allen never engaged him in a dialogue to discuss accommodations related to this report. (Compl. ¶¶ 33, 35.)[1]

Plaintiff did not return to SJSU when his medical leave expired, and his admissions status was revoked. (FAC ¶ 36.)

On December 2, 2013, Plaintiff met with Defendant Young to request copies of homework

---

[1] Plaintiff does not appear to identify what these accommodations would entail. (*See* FAC ¶¶ 33-35.)

records, to present to the Department of Rehabilitation ("DOR") to reinstate his DOR benefits. (FAC ¶¶ 37-38.) Defendant Young provided one homework record from the Fall 2006 ChE190 course, which indicated that Plaintiff did not submit some of his homework. (FAC ¶ 38.)

On April 21, 2014, Plaintiff again sought his homework records from Defendant Young in order to support his DOR reinstatement. (FAC ¶¶ 39-40.) Defendant Young became angry and gave him his homework record from the ChE160A course only. (FAC ¶ 41.) On April 23, 2014, Plaintiff returned to Defendant Young's office to obtain the remaining homework records. (FAC ¶ 42.) Defendant Young agreed to provide the records, but told Plaintiff they would not help him with reinstatement with the DOR. Plaintiff also asked for academic counseling, but Defendant Young became angry and told Plaintiff he was not eligible for the program. (FAC ¶ 43.) Defendant Young then went on a tirade, telling Plaintiff that this was a waste of his and the DOR's time, and that Plaintiff was not to return to his office. (FAC ¶ 44.) Defendant Young ordered Plaintiff to follow him outside his office, continuing his tirade and criticism of Plaintiff in front of other students and staff members. (*Id.*) Defendant Young's actions caused Plaintiff severe emotional distress, and Plaintiff is now being prescribed medications to treat symptoms including traumatic flashbacks, insomnia, nightmares, anxiety, shame, embarrassment, hopelessness, depression, and suicidal thoughts. (FAC ¶ 45.)

## B. Procedural Background

Plaintiff filed the instant action on April 22, 2016. On June 3, 2016, Defendant CSU filed a motion to dismiss. (Dkt. No. 11.) On June 30, 2016, Plaintiff filed a request that the Court dismiss all of the state claims. (Dkt. No. 19.) On July 6, 2016, the Court issued an order construing Plaintiff's filing as a voluntary dismissal of the state law claims for intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence, and dismissed those claims. (Dkt. No. 20.)

On September 9, 2016, the Court issued an order granting in part and denying in part Defendant CSU's motion to dismiss. (Ord., Dkt. No. 30.) The Court explained that "[e]ven assuming a three-year statute of limitations for both the Title II and § 504 claim, the vast majority of Plaintiff's allegations take place more than three years prior to the filing of his complaint on

April 22, 2016," with the only wrongful event occurring within the three-year statutory period. (*Id.* at 10.)  The Court found that the continuing violations doctrine and hostile learning environment theory did not apply, but that "Plaintiff may be able to allege facts to support a tolling argument." (Ord. at 13.)  The Court therefore dismissed Plaintiff's claims based on events outside the statutory period with leave to amend, to allow Plaintiff to plead additional facts to support an equitable tolling argument.  (*Id.* at 14.)  The Court denied Defendant CSU's motion to dismiss the Title II and Rehabilitation Act claims based on the April 23, 2014 meeting between Plaintiff and Professor Young.  (*Id.* at 17.)

On February 10, 2017, Plaintiff filed an amended complaint, alleging seven causes of action: (1) violation of Title II by Defendant Young on April 23, 2014, based on Defendant Young disqualifying Plaintiff from participating in the Chemical Engineering Program; (2) violation of Title II by Defendant Young on April 23, 2014, based on Defendant Young coercing, intimidating, threatening, or interfering with Plaintiff's exercise of his ADA rights; (3) violation of Title II by Defendant Young on September 20, 2011, based on Defendant Young's coercing, intimidating, threatening, or interfering with Plaintiff's exercise of his ADA rights; (4) violation of Title II by Defendant Young on September 20, 2011, based on his refusal to authorize Plaintiff's medical leave; (5) violation of Title II by Defendant Young on September 20, 2011, based on his failure to accommodate Plaintiff's disability; (6) violation of Title II by Dr. Allen on September 20, 2011, based on her failure to accommodate Plaintiff; and (7) violation of § 504 by all Defendants.  (FAC ¶¶ 49-94.)

On March 23, 2017, Defendants filed a motion to dismiss, on the grounds that all claims against Defendant Young had to be dismissed because there could not be personal liability, and because the statute of limitations had run on actions arising in September 2011 and before.  (Defs.' Mot. at 8-9.)  On April 27, 2017, Plaintiff filed an opposition, in which he asked to voluntarily dismiss the claims against Defendant Young as an individual.  (Plf.'s Opp'n at 3, Dkt. No. 49.) Plaintiff disputed, however, that he had not been able to sufficiently plead facts to support a tolling argument.  (*Id.* at 3-4.)  On May 2, 2017, Defendants filed their reply.  (Defs.' Reply, Dkt. No. 50.)

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted.  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate.  *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co*., 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . .  When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations

omitted).

### III.    ANALYSIS

Plaintiff alleges six claims under Title II of the ADA, including five claims against Defendant Young and one claim against Dr. Allen.  Plaintiff does not assert any Title II claims against Defendant CSU.  Plaintiff also alleges a § 504 claim against Defendants Young and CSU.

In his opposition, Plaintiff "proposes voluntary dismissal of claims against [Defendant] Young as an individual in the federal action," based on his "acknowled[ment] that he no longer has a claim against Young as an individual in the federal action."  (Plf.'s Opp'n at 3.)  The Court will construe this as a voluntary dismissal of all of Plaintiff's claims against Defendant Young, including the five Title II claims and the § 504 claim, pursuant to Federal Rule of Civil Procedure 41(a).  Construing the filing as such, the Court dismisses all claims against Defendant Young.

As to Plaintiff's sixth cause of action for a Title II claim against Dr. Allen, the Court will dismiss this claim because Dr. Allen is not a named defendant in this case.  This disposes of all of Plaintiff's ADA claims, leaving only Plaintiff's § 504 claim against Defendant CSU.

With respect to Plaintiff's § 504 claim against Defendant CSU, the only dispute is whether Plaintiff can bring a claim based on events occurring prior to April 22, 2013, *i.e.*, three years prior to Plaintiff filing his complaint on April 22, 2016.  The Court previously found that Plaintiff could allege facts to support an equitable tolling argument.  (Ord. at 13.)  "Equitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time."  *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999).

#### A.  Fraudulent Concealment

First, the parties dispute whether Plaintiff has sufficiently asserted equitable tolling based on the "wrongful conduct on the part of the defendant."  Plaintiff contends that with respect to the September 20, 2011 event in which Defendant Young refused to sign Plaintiff's request for extension of his medical leave, Dr. Allen's failure to indicate that Defendant Young's conduct was unusual "created the 'illusion' that [Defendant] Young's conduct was reasonable and proper." (Plf.'s Opp'n at 4; *see also* FAC ¶ 32 ("Allen's responses to Plaintiff's report had the effect of

concealing [Defendant] Young's wrongful conduct from Plaintiff").) Based on Dr. Allen's reaction, Plaintiff "had no reason to continue his efforts to uncover the facts," particularly because Dr. Allen was "a person in a position of trust and authority," on whom Plaintiff was relying. (Plf.'s Opp'n at 4; *see also id.* at 3.) Plaintiff also contends that Dr. Allen's actions were "not 'passive' because it had a specific intent," although Plaintiff does not specify what that intent was. (*Id.* at 4.)

The Court finds that these allegations are insufficient to support a claim for equitable tolling based on "wrongful conduct." Based on Plaintiff's complaint, which alleges that Dr. Allen "conceal[ed Defendant] Young's wrongful conduct from Plaintiff," it appears Plaintiff is asserting the doctrine of fraudulent concealment. (FAC ¶ 32.) Under this doctrine, "[a] statute of limitations may be tolled if the defendant fraudulently concealed the existence of a cause of action in such a way that the plaintiff, acting as a reasonable person, did not know if its existence." *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012). The plaintiff has the burden of pleading and proving fraudulent concealment, including pleading "facts showing that the defendant affirmatively misled [the plaintiff], and that the plaintiff had *neither actual nor constructive knowledge* of the facts giving rise to its claim despite its diligence in trying to uncover those facts." *Id.* (internal quotation and modifications omitted).

With respect to affirmative steps to mislead, the Ninth Circuit has explained that "[p]assive concealment of information is not enough to toll the statute of limitations, unless the defendant had a fiduciary duty to disclose information." *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 505 (9th Cir. 1988). For example, in *Conmar*, the plaintiff had alleged that the defendant "affirmatively acted to conceal its anticompetitive behavior by creating customs and other documents falsely reporting prices . . . ." *Id.* The Ninth Circuit found that a jury could find the filing of false customs forms to be affirmative conduct that would support application of the fraudulent concealment doctrine. *Id.*; *see also In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-2420-YGR, 2014 WL 309192, at *16 (N.D. Cal. Jan. 21, 2014) (finding affirmative act where the defendant made public, false statements affirming their compliance with applicable antitrust laws, and took affirmative steps to destroy evidence of secret meetings). In contrast, in *In re*

*Animation Workers Antitrust Litigation*, the district court found there was no affirmative act where the plaintiffs alleged that the defendants' senior human resources directors and management discussed a conspiracy in small meetings, avoided memorializing those meetings in writing, and kept the conspiracy secret from the plaintiffs. 87 F. Supp. 3d 1195, 1215 (N.D. Cal. 2015). The district court explained that the fact that certain defendants met and conspired did not mean that the defendants took active, affirmative steps to mislead the plaintiffs about the existence of actionable claims; "[t]hat [the d]efendants did not affirmatively disclose the details of their allegedly unlawful conspiracy to [the p]laintiffs is neither surprising nor sufficient to constitute affirmative steps to mislead. If the mere fact of a secret conspiracy were sufficient to toll the statute of limitations under the fraudulent concealment doctrine, there would be little point in imposing a period of limitation in the first instance." *Id.* at 1216.

Here, Plaintiff argues that Dr. Allen did not indicate to Plaintiff that Defendant Young's conduct was unusual; in other words, Plaintiff's tolling argument is based on Dr. Allen's *failure* to inform Plaintiff about the illegality of Defendant Young's conduct. This is not sufficient to satisfy the affirmative act requirement; instead, it is more akin to a passive concealment of information, similar to that of *In re Animation Workers Antitrust Litigation*. To the extent Plaintiff argues that Dr. Allen's response was not passive because it had a "specific intent," Plaintiff does not explain what that specific intent was, nor does he allege any facts in support. Moreover, even if Dr. Allen was specifically trying to conceal the alleged illegality of Defendant Young's actions, such intent does not transform a passive act into an affirmative act. For example, in *In re Animation Workers Antitrust Litigation*, the defendants too were trying to keep the conspiracy secret from the plaintiffs; despite that intent, the district court still concluded there was no affirmative act sufficient to support application of the fraudulent concealment doctrine. Because Plaintiff has not alleged an affirmative act, the fraudulent concealment doctrine does not apply.

Further, even if Plaintiff had alleged an affirmative act, Plaintiff has not alleged that he had no knowledge of the *facts* which give rise to his claim. Instead, Plaintiff did know of the facts regarding Defendant Young's actions, as he personally experienced those acts and then reported it to Dr. Allen. (FAC ¶¶ 31-32.) Dr. Allen's acts did not conceal the existence of those facts to

Plaintiff; instead, her alleged inaction resulted in Plaintiff not being aware of the *legal significance* of those facts. Thus, the fraudulent concealment doctrine does not apply, and Plaintiff has failed to allege facts that would permit equitable tolling based on the wrongful conduct of Defendants.

### B.     Extraordinary Circumstances

Second, Defendants argue that Plaintiff has not pled facts showing "extraordinary circumstances beyond the plaintiff's control" that made it impossible to file a timely claim. (Defs.' Mot. at 9.) The Ninth Circuit has held that "mental incompetence constitutes a ground for equitable tolling . . . when mental incompetence precludes a person from asserting his rights during the proper time period . . . ." *Brockamp v. United States*, 67 F.3d 260, 263 (9th Cir. 1995), *rev'd on other grounds by United States v. Brockamp*, 519 U.S. 347 (1996); *see also Garcia v. Brockway*, 526 F.3d 456, 465 (9th Cir. 2008) (citing *Brockamp* for the proposition that equitable tolling may be appropriate "if a medical condition prevented a plaintiff from filing suit").

In *Stoll*, the Ninth Circuit found that the plaintiff's mental incapacity constituted an extraordinary circumstance, where the plaintiff had attempted suicide multiple times; was unable to read, open mail, or function in society; and could not exercise an agency relationship with her attorney, due to her mental illness. 165 F.3d at 1242. In contrast, the district court found that equitable tolling did not apply in *Walker v. Pacific Maritime Association*. No. C07-3100 BZ, 2009 WL 1068886, at *3 (N.D Cal. Apr. 20, 2009). There, the plaintiff was injured while working as an employee for the defendant, resulting in substantial and chronic brain damage, including symptoms of severe headaches, dizziness, ataxia, and memory problems. *Id.* at *1. The district court found that the plaintiff had not adequately demonstrated that he was incapable of filing a complaint against the defendant, particularly where the plaintiff had in fact obtained legal counsel to pursue worker's compensation claims, personally attended a union grievance hearing, and filed charges of discrimination with government agencies. *Id.* at *3.

Here, the Court finds that Plaintiff has not adequately pled that his mental incapacity was of such a nature that it prevented him from filing a lawsuit. While Plaintiff asserts that he suffered emotional distress, and is being prescribed medications to treat symptoms including traumatic flashbacks, insomnia, nightmares, anxiety, shame, embarrassment, hopeless, depression, and

suicidal thoughts, Plaintiff does not allege that these symptoms prevented him from timely filing his lawsuit. (*See* FAC ¶¶ 31, 45.) Both in the complaint and at the hearing, Plaintiff states that he did not recognize that his emotional distress was caused by his interactions with Defendant Young, but does not attribute that lack of understanding to his emotional distress. (FAC ¶ 32.) Rather, Plaintiff attributes that lack of understanding to Dr. Allen's failure to indicate to Plaintiff that Defendant Young's conduct was wrong. (*Id.*) Thus, the Court finds that Plaintiff has not alleged facts to warrant tolling of the statute of limitations due to extraordinary circumstances.

Absent adequate allegations of equitable tolling, Plaintiff cannot bring claims based on actions occurring outside of the statutory period, including the September 20, 2011 event in which Defendant Young refused to sign the request for extension of Plaintiff's medical leave. To the extent Plaintiff's § 504 claim is based on events outside of the statutory period, the § 504 claim is dismissed with prejudice.

## IV.    CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' motion to dismiss the individual claims against Defendant Young and Defendant Allen, and to dismiss all claims that are premised on actions outside of the statutory period, *i.e.*, three years prior to Plaintiff filing his complaint on April 22, 2016. These claims are dismissed with prejudice.

///

///

///

///

///

///

///

///

///

///

///

At the hearing, Plaintiff indicated that he had intended to bring an ADA claim against Defendant CSU; the Court therefore will allow Plaintiff to amend his complaint to assert ADA and § 504 claims against Defendant CSU based on actions that occurred within the statutory period. Plaintiff has forty-five (45) days from the date of this order to file a Second Amended Complaint. Plaintiff is on notice that the First Amended Complaint will supersede the original complaint, such that it will be treated as nonexistent. *See Armstrong v. Davis*, 275 F.3d 849, 878 n.40 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005). For this reason, Plaintiff shall properly identify the legal and factual bases for all of his claims, free of any reference to any prior complaint.

IT IS SO ORDERED.

Dated: June 14, 2017

_____
KANDIS A. WESTMORE
United States Magistrate Judge