UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK TICER,<br>　　　　Plaintiff,<br>　　v.<br>GREGORY YOUNG, et al.,<br>　　　　Defendants. | Case No. 16-cv-02198-KAW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND STRIKE**<br><br>Re: Dkt. No. 86 |

Plaintiff Mark Ticer brings the instant suit against Defendants Gregory Young and the Board of Trustees of the California State University ("CSU"), alleging violations of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act of 1973, the Unruh Civil Rights Act, and California Government Code § 11135, as well as intentional infliction of emotional distress ("IIED"). (Fourth Amended Compl. ("FAC") ¶ 1, Dkt. No. 82.) Pending before the Court is Defendants' motion to dismiss the fourth amended complaint, and to strike certain portions of the complaint. (Defs.' Mot., Dkt. No. 86.) Upon consideration of the parties' filings, as well as the arguments presented at the May 3, 2018 hearing, and for the reasons stated below, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss and strike.

**I.　BACKGROUND**

**A.　Factual Background**

In 2000, Plaintiff was admitted as a student at San Jos State University ("SJSU") College of Engineer's Biomedical, Chemical, and Material Engineering ("BCME") department. (FAC ¶ 3.) Plaintiff has a disability that causes Plaintiff to experience debilitating fear and anxiety related to other people. (FAC ¶ 16.) In March 2001, Plaintiff applied for services with SJSU's Disability Resource Center ("DRC"). (FAC ¶ 15.) The DRC determined Plaintiff was eligible for services

and registered him as a disabled student, providing him with a DRC identification card.

Plaintiff's disability periodically prevented Plaintiff from taking an exam or turning in completed homework assignments. (FAC ¶ 16.) Plaintiff would typically explain to the professor his disabled status and request a reasonable accommodation. All of Plaintiff's professors accommodated Plaintiff's disability, except for Defendant Young. (FAC ¶ 17.)

During the Fall 2003 semester, Plaintiff enrolled in ChE190 course, a class taught exclusively by Defendant Young. (FAC ¶ 18.) Because of his disability, Plaintiff was occasionally unable to turn in his homework during the first five minutes of class, as required by Defendant Young. (FAC ¶ 19.) Although Plaintiff met with Defendant Young and explained his disability, Defendant Young refused to accept the late homework assignments, or to accept homework by e-mail. Instead, Defendant scolded him and complained that he did not "have time for [Plaintiff's] problems." (FAC ¶ 19.) Defendant Young also refused to allow Plaintiff to make up an exam, telling Plaintiff that he could not pass the course with his problems and that he should change his major. (FAC ¶ 20.) Plaintiff came to believe that Defendant Young and Dr. Emily Allen, the Chair of the BCME Department, "had ultimate authority regarding his chemical engineering courses and major, and had no obligation to accommodate him." (FAC ¶¶ 22-23.)

On December 16, 2003, Plaintiff met with Dr. Allen to ask if she would support an incomplete grade in Defendant Young's class to accommodate his disability. (FAC ¶ 25.) Dr. Allen responded by telling Plaintiff that "this wasn't going to work," that the program was too difficult for him, and that he should change his major. (FAC ¶ 26.)

As a result of his interactions with Defendant Young and Dr. Allen, Plaintiff experienced disability-related paranoia and intense fear related to Defendant Young and Dr. Allen. (FAC ¶ 30.) Plaintiff also developed fixed belief that Defendant Young and Dr. Allen would expel him from the engineering program if he did not pass ChE190 on Defendant Young's terms. Thus, Plaintiff believed that he had to continue trying to pass the course, and that there was no obligation to accommodate him. (FAC ¶ 30.)

Plaintiff again enrolled in ChE190 in Fall 2004 and 2006. (FAC ¶ 31.) Whenever he asked for homework- or exam-related accommodations, Defendant Young would become

increasingly angry and agitated, shame and criticize Plaintiff, and refuse to provide any accommodations while discouraging Plaintiff from pursuing his major. (FAC ¶ 32.) Plaintiff did not pass the class, and each interaction with Defendant Young exacerbated Plaintiff's disability, causing him to feel extremely upset, intimidated, ashamed, and humiliated. (FAC ¶¶ 33-34.)

Plaintiff enrolled in ChE160A in Spring 2007, another class taught exclusively by Defendant Young. (FAC ¶ 38.) Plaintiff continued to experience disability-related paranoia and fear related to Defendant Young, and he believed that the only way to stay enrolled in the program was to pass ChE160A on Defendant Young's terms. When Plaintiff attempted to request accommodations for his disability, Defendant Young would refuse, belittling and scolding Plaintiff. (FAC ¶ 39.) Plaintiff did not complete ChE160A. (FAC ¶ 41.)

In Spring 2007, Defendant Young told Plaintiff that he would have to repeat ChE190. (FAC ¶ 40.) Plaintiff attempted to do so in Fall 2009, but was unable to pass the course after Defendant Young refused to provide any accommodations. (FAC ¶¶ 40, 43, 45.) In Fall 2009, Plaintiff again attempted to complete ChE190. (FAC ¶ 47.) Plaintiff, however, was unable to attend the course without experiencing extreme fear and severe emotional distress, and was unable to enroll in the Fall 2009 semester.

As a result of Plaintiff's distress from interacting with Defendant Young, Plaintiff took a leave of absence from Fall 2010 to Fall 2011. (FAC ¶ 48.) In September 2011, Plaintiff tried to extend his medical leave, which required Defendant Young's signature. (FAC ¶ 49.) Defendant Young refused to sign, and went on a tirade regarding Plaintiff's shortcomings as a disabled student. That same day, Plaintiff reported the incident to Dr. Allen. (FAC ¶ 50.) Dr. Allen did not comment on Defendant Young's behavior, but granted the extension.

Due to the emotional distress caused by Plaintiff's interactions with Defendant Young, Plaintiff was unable to return to SJSU after his medical leave expired, and he was disenrolled. (FAC ¶ 52.) Plaintiff alleges that he never received notice of his disenrollment from SJSU. (FAC ¶ 54.)

While at SJSU, Plaintiff had been receiving financial assistance from the Department of Rehabilitation ("DOR"). (FAC ¶ 53.) While Plaintiff was on medical leave, the DOR closed his

file. In December 2013, Plaintiff's symptoms lessened sufficiently, and he sought Defendant Young's support in obtaining funding from the DOR so that he could return to school. (FAC ¶ 55.) On December 2, 2013, Plaintiff met with Defendant Young to request a letter of support and copies of his homework records. (FAC ¶ 56.) Defendant Young did not provide a letter of support, referred Plaintiff back to the DOR, and provided Plaintiff with one homework record. (FAC ¶ 56.)

On April 21, 2014, Plaintiff sought the rest of his homework records from Defendant Young. (FAC ¶ 57.) Defendant Young was angry and demanded to know why Plaintiff was there. When Plaintiff explained that he needed his remaining homework records for the DOR, Defendant Young gave Plaintiff his homework records from ChE160A only. (FAC ¶ 57.)

On April 23, 2014, Plaintiff again requested his remaining homework records from Defendant Young. (FAC ¶ 58.) Defendant Young told Plaintiff the records would not help with the DOR, and that Plaintiff was not eligible for the engineering program. Defendant Young then went on a tirade, telling Plaintiff that this was a waste of time and that he should not return. (FAC ¶ 59.) Defendant Young then ordered Plaintiff to follow him into a public area, where he ridiculed and criticized Plaintiff in front of other students and staff. Defendant Young's behavior caused Plaintiff to experience shock, terror, shame, and breathing difficulties. (FAC ¶ 60.)

Following the April 23, 2014 meeting with Defendant Young, Plaintiff's "health deteriorated significantly." (FAC ¶ 61.) Plaintiff experienced and continues to experience depression, hopelessness, suicidal thoughts, insomnia, startle responses, flashbacks, severe anxiety, shame, embarrassment, nightmares, and intrusive thoughts. Around June 2014, Plaintiff's doctor diagnosed him with post-traumatic stress disorder ("PTSD") related to his interactions with Defendant Young. (FAC ¶ 63.) Plaintiff's doctor also stated that Defendant Young's behavior was reprehensible and that Plaintiff had rights as a disabled person. (FAC ¶ 63.)

In August 2014, Plaintiff went to the SJSU Ombudsperson's office to report Defendant Young's behavior. (FAC ¶ 64.) Plaintiff was interviewed by Human Resources, but does not believe any further action was taken regarding his report of Defendant Young's behavior. (FAC ¶¶ 65-66.) On September 30, 2015, Plaintiff spoke with Jinny Rhee, the Associate Dean of the

4

College of Engineering. (FAC ¶ 67.) Plaintiff learned that he had been disqualified from the engineering program. When he asked about being reinstated into the program, Associate Dean Rhee stated that she agreed with the decision and that he would not be reinstated. Plaintiff asserts that he never received notice of his disqualification from the engineering program. (FAC ¶ 69.)

### B. Procedural Background

Plaintiff filed the instant action on April 22, 2016. On June 3, 2016, Defendant CSU filed a motion to dismiss. (Dkt. No. 11.) On September 9, 2016, the Court granted in part and denied in part Defendant CSU's motion to dismiss. (September 9, 2016 Ord., Dkt. No. 30.) The Court explained that "[e]ven assuming a three-year statute of limitations for both the Title II and § 504 claim, the vast majority of Plaintiff's allegations take place more than three years prior to the filing of his complaint on April 22, 2016," with the only wrongful event occurring within the three-year statutory period being the April 23, 2014 meeting. (*Id.* at 10.) The Court found, however, that "Plaintiff may be able to allege facts to support a tolling argument." (*Id.* at 13.) The Court therefore gave Plaintiff leave to plead additional facts to support a tolling argument. (*Id.* at 14.) The Court denied Defendant CSU's motion to dismiss the Title II and Rehabilitation Act claims based on the April 23, 2014 meeting between Plaintiff and Professor Young. (*Id.* at 17.)

On February 10, 2017, Plaintiff filed an amended complaint. (First Amended Compl. ¶¶ 49-94, Dkt. No. 39.) On March 23, 2017, Defendants filed a motion to dismiss, arguing in part that the statute of limitations had run on actions arising in September 2011 and before. (Dkt. No. 45.) On June 14, 2017, the Court granted Defendants' motion to dismiss, finding that Plaintiff had not sufficiently asserted equitable tolling. (June 14, 2017 Ord. at 8-12, Dkt. No. 53.) In so concluding, the Court found that "Plaintiff ha[d] not adequately pled that his mental incapacity was of such a nature that it prevented him from filing a lawsuit." (*Id.* at 11.) While the Court acknowledged that Plaintiff asserted that he suffered emotional distress, the Court explained that "Plaintiff d[id] not allege that these symptoms prevented him from timely filing his lawsuit." (*Id.* at 12.) Moreover, although Plaintiff stated that he did not recognize that his emotional distress was caused by his interactions with Defendant Young, he did not attribute that lack of understanding to his emotional distress, but to Dr. Allen's failure to indicate to Plaintiff that

5

1 Defendant Young's conduct was wrong. (*Id.*)

2 On July 31, 2017, Plaintiff filed his second amended complaint. (Dkt. No. 58.) On October 10, 2017, the parties filed a stipulation to consolidate Plaintiff's state action into the instant federal case. (Dkt. No. 68.) Pursuant to the stipulation, Plaintiff filed a third amended complaint on November 13, 2017. (Dkt. No. 72.)

In December 2017, Plaintiff obtained counsel. (Dkt. Nos. 73-74.) On February 13, 2018, the parties stipulated to the filing of an amended complaint. (Dkt. No. 79.) On February 27, 2018, Plaintiff filed the instant complaint, asserting claims of: (1) violation of Title II of the ADA, (2) retaliation and interference in violation of Title V of the ADA, (3) violation of § 504 of the Rehabilitation Act, (4) retaliation and interference in violation of § 504, (5) violation of California Government Code § 11135, (6) violation of the Unruh Civil Rights Act, and (7) intentional infliction of emotional distress ("IIED"). (FAC at 11-18.) The first six causes of action are brought against Defendant CSU only; the seventh cause of action is brought against both Defendants CSU and Young. Plaintiff seeks damages, declaratory relief, and injunctive relief. (FAC at 18-19.)

On March 26, 2018, Defendants filed a motion to dismiss and to strike certain allegations and relief sought. On April 9, 2018, Plaintiff filed his opposition. (Plf.'s Opp'n, Dkt. No. 89.) On April 16, 2018, Defendants filed their reply brief. (Defs.' Reply, Dkt. No. 90.)

## II. LEGAL STANDARD

### A. Request for Judicial Notice

A district court may take judicial notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). A court may, therefore, take judicial notice of matters of public record. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

### B. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A motion to dismiss under Rule

12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

### C. Motion to Strike

Federal Rule of Civil Procedures 12(f) provides that, on its own or on a motion from a

party, a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The purposes of a Rule 12(f) motion is to avoid spending time and money litigating spurious issues." *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010) (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)). "A matter is immaterial if it has no essential or important relationship to the claim for relief pleaded," and "[a] matter is impertinent if it does not pertain and is not necessary to the issues in question in the case." *Id.* Motions to strike, however, "are generally disfavored because the motions may be used as delaying tactics and because of the strong policy favoring resolution of the merits." *Id.* (citation omitted). Thus, "[b]efore a motion to strike is granted the court must be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed." *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005). As with a motion to dismiss, "the court must view the pleading under attack in the light most favorable to the pleader." *Id.* (citation omitted).

### III. DISCUSSION

#### A. Request for Judicial Notice

Defendants request that the Court take judicial notice of: (1) Plaintiff's claim form, received by Defendant CSU on October 23, 2014; (2) a letter from CSU, dated on November 4, 2014; (3) unspecified allegations and exhibits in Plaintiff's prior complaints; and (4) the docket for the Chapter 7 bankruptcy actions filed by Plaintiff on April 23, 1996 and March 25, 1997. (Defs.' Mot. at 18; Defs.' Reply at 11.) Plaintiff did not file an opposition to Defendants' request for judicial notice, and so Plaintiff is not deemed to dispute the authenticity of any of the exhibits.

The Court may take judicial notice of the filing date and content[1] of the CSU Claim Form, and of the filing date and content of CSU's response as these documents are a matter of public record which set forth facts "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." *Clarke v. Upton*, 703 F. Supp. 2d 1037, 1042

---

[1] The Court does not take the content as true, but considers it for the purpose of whether a particular claim was presented to the government.

8

1  (E.D. Cal. 2010) (taking judicial notice of tort claims and their rejection by the county).  The

2  Court also takes judicial notice of the dockets for the bankruptcy proceedings, as judicial notice

3  may be taken of court records.  *See* Fed. R. Evid. 201(b)(2); *Wilson*, 631 F.2d at 119 ("a court may

4  take judicial notice of its own records in other cases, as well as the records of an inferior court in

5  other cases").

With respect to Plaintiff's prior complaints, the Court is not required to take judicial notice of information that is already a part of the record.  Thus, the Court denies Defendants' request for judicial notice of the prior filings in this case.

### B. Motion to Dismiss

Defendants seek to dismiss Plaintiff's claims to the extent that they fall outside of the three-year statute of limitations, on the ground that Plaintiff has not adequately alleged that his emotional distress prevented him from timely filing. (Defs.' Mot. to Dismiss at 10-12.) Defendants also assert that the California claims should be dismissed to the extent Plaintiff failed to timely present a claim to Defendant CSU. (*Id.* at 13.) Finally, Defendants contend that the IIED claim cannot be brought against Defendant CSU because public entities are immune from common law IIED. (*Id.* at 14.)

#### i. Equitable Tolling

Here, the primary issue is whether Plaintiff's emotional distress and his lack of notice about his disqualification from SJSU's engineering program can serve as the basis for equitable tolling of the statute of limitations. As an initial matter, however, Plaintiff argues that this issue should not be decided on a motion to dismiss "because the applicability of the equitable tolling doctrine often depends on matters outside the pleadings." (Plf.'s Opp'n at 7.) While the Ninth Circuit has acknowledged that "it is rarely appropriate to grant a Rule 12(b)(6) motion to dismiss (where review is limited to the complaint) if equitable tolling is at issue," the Ninth Circuit in that same case upheld the district court's grant of a motion to dismiss where the plaintiffs asserted equitable tolling. *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1003-04 (9th Cir. 2006). Other courts in this district have decided equitable tolling based on mental disability at the motion to dismiss stage. *E.g.*, *Dye v. United States Gov't*, Case No. 16-cv-6882-KAW, 2018 WL 1091161, at *6-8

(N.D. Cal. Feb. 28, 2018) (finding that equitable tolling did not apply based on the plaintiff's depression and other medical problems); *Lacayo v. Donahoe*, Case No. 14-cv-4077-JSC, 2015 WL 993448, at *11-12 (N.D. Cal. Mar. 4, 2015) (finding that equitable tolling did not apply based on the plaintiff's mental disability at the motion to dismiss stage). Moreover, Plaintiff points to no facts outside of the pleadings that would need to be considered to determine whether equitable tolling applies in this case.[2] Therefore, the Court will consider the equitable tolling issue at this stage, taking the facts in the complaint as true.

In general, equitable tolling exists "to relieve hardships which, from time to time, arise from a hard and fast adherence to more absolute legal rules, which, if strictly applied, threaten the evils of archaic rigidity." *Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013) (internal quotation omitted). It is only available in "extreme cases," and "has been applied sparingly." *Scholar v. Pac. Bell*, 963 F.2d 264, 267 (9th Cir. 1992). The party invoking "equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." *Wong*, 732 F.3d at 1052 (internal quotation omitted). The first element "requires the effort that a reasonable person might be expected to deliver under his or her particular circumstances. Central to the analysis is whether the plaintiff was without any fault in pursuing his claim." *Id.* (internal quotation omitted). As to the second element, the party "must show that extraordinary circumstances were the cause of his untimeliness and . . . made it impossible to file the document on time." *Id.* (internal quotation omitted). Thus, equitable tolling is generally granted "when litigants are unable to file timely documents as a result of external circumstances beyond their direct control." *Id.* (internal

---

[2] Plaintiff argues that the motion to dismiss should be denied in order to allow for development of the record as to Plaintiff's mental impairments. (Plf.'s Opp'n at 10.) Again, Plaintiff points to no facts that would need to be developed. Additionally, both cases cited by Plaintiff are habeas cases, and the Ninth Circuit has found specific to such cases that the court must develop the record to determine if a prisoner's mental problems made it impossible to meet the deadlines set in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Laws v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (explaining when development was required to be entitled to a finding of an impediment under the AEDPA); *Roy v. Lampert*, 465 F.3d 964, 969 (9th Cir. 2006) ("A habeas petitioner . . . should receive an evidentiary hearing when he makes a good faith allegation that would, if true, entitle him to equitable tolling") (internal quotation and emphasis omitted).

10

quotation omitted).

a. Mental Disability

The Ninth Circuit has found that mental incompetence can toll a statute of limitations when it "precludes a person from asserting his rights during the proper time period." *Brockamp v. United States*, 67 F.3d 260, 263 (9th Cir. 1995), *rev'd on other grounds by United States v. Brockamp*, 519 U.S. 347 (1996); *see also Garcia v. Brockway*, 526 F.3d 456, 465 n.9 (9th Cir. 2008) (citing *Brockamp* for the proposition that "equitable tolling may be appropriate . . . if a medical condition prevented a plaintiff from filing suit"). To establish equitable tolling, the plaintiff must establish that the "mental impairment was an 'extraordinary circumstance' beyond his control by demonstrating the impairment was so severe that either (a) plaintiff was unable rationally or factually to personally understand the need to timely file, or (b) plaintiff's mental state rendered him unable personally to prepare a complaint and effectuate its filing." *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011).[3]

In determining whether mental impairment is an extraordinary circumstance, courts in this circuit have found that "[t]he threshold for incapacitation . . . requires a showing that the plaintiff 'was completely psychiatrically disabled during the relevant limitation period.'" *Lacayo*, 2015 WL 993448, at *11 (quoting *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999)). For example, in *Stoll*, the Ninth Circuit found that the plaintiff was entitled to equitable tolling because "[t]he effects of the repeated sexual abuse, rape, and assault she experienced left her severely impaired and unable to function in many respects," observing that the plaintiff had repeatedly attempted suicide, and was unable to read, open mail, function in society, and exercise an agency relationship with her attorney. 165 F.3d at 1242. In *Forbess v. Franke*, the Ninth Circuit likewise found that the plaintiff was entitled to equitable tolling of his habeas petition where the plaintiff suffered severe delusions that he was an undercover FBI agent working to apprehend his ex-wife,

---

[3] Although stated in the disjunctive, in *Forbess v. Franke*, the Ninth Circuit stated that both prongs had to be met. 749 F.3d 837, 840 (9th Cir. 2014) ("The impairment must have been (1) so severe that the petitioner was unable personally to understand the need to timely file a habeas petition, **and** (2) made it impossible under the totality of the circumstances to meet the filing deadline despite petitioner's diligence") (emphasis added and internal quotations omitted).

11

and that the FBI had staged his conviction in an effort to lure his ex-wife out of hiding. 749 F.3d 837, 839-40. The plaintiff also believed that the FBI had asked him to stay in prison until his ex-wife was arrested, at which time the FBI would secure his release, therefore making it unnecessary to file a habeas petition. *Id.* at 839. The Ninth Circuit explained that "the peculiar nature of [the plaintiff's] mental illness" made it so that it was not possible for the plaintiff to "rationally understand the need to pursue federal post-conviction relief [because] if his reluctance to do so was due to his delusional belief that the FBI wanted him to lay low as bait for the cartel, then before the delusion lifted *nothing anyone might have said to him* about the need to timely file would have altered his behavior." *Id.* at 841. In other words, "[e]ven if [the plaintiff] had understood his legal rights completely, he would not have filed." *Id.*

In contrast, courts have not applied equitable tolling based on mental disability even where the plaintiff suffered significant mental health issues. In *Orthel v. Yates*, the Ninth Circuit declined to apply equitable tolling where the plaintiff "grappled periodically with significant mental issues during his incarceration," but had also been occasionally found to be "fully alert and oriented" with "fairly good insight and judgment regarding his illness," was described as "responsive, clear, coherent, and high functioning," and had at times been able to "participate[] productively in correspondence courses, college-level courses, and prison programming that required substantial mental competence." 795 F.3d 935, 939 (9th Cir. 2015). In *Lacayo*, the district court likewise found that equitable tolling did not apply where the plaintiff had been diagnosed with bipolar disorder, PTSD, and depression, but was still able to apply for state disability benefits and file written requests for copies of her employment file. 2015 WL 993448, at *12. Thus, the district court found that the plaintiff did not suffer "the type of utter incompetence that gives rise to incapacitation-based tolling." *Id.* Similarly, in *Elshirbing v. Hewlett Packard Co.*, the district court did not apply equitable tolling where the plaintiff asserted that she had chronic fatigue syndrome and other work injuries with incapacitating side effects, and that the defendants had suppressed and oppressed her motivation to in inferior intellectual status which impacted her emotionally and psychologically. Case No. 00-cv-4104-MMC, 2001 WL 590034, at *4. The district court found that there no showing that these "asserted medical

12

problems significantly impaired her ability to function or to communicate," or from obtaining the information she needed. *Id.* at *5.

Here, Plaintiff asserts that his interactions with Defendant Young while he was enrolled at SJSU exacerbated his disability "and caused him to feel extremely upset, intimidated, ashamed, and humiliated." (FAC ¶¶ 21, 34, 42, 44, 49, 52.) In December 2013, Plaintiff's symptoms abated sufficiently to allow Plaintiff to take steps to try and return to school. (FAC ¶ 55.) After Plaintiff's April 23, 2014 meeting with Defendant Young, however, Plaintiff's "health deteriorated significantly," and the cumulative distress of his interactions with Defendant Young "caused (and still causes) him to experience depression, hopelessness, suicidal thoughts, insomnia, flashbacks, startle responses, severe anxiety, shame, embarrassment, nightmares and intrusive thoughts about the interactions." (FAC ¶ 61.) Plaintiff was also diagnosed with PTSD related to his experiences with Defendant Young in June 2014. (FAC ¶ 63.)

The Court, while sympathetic to Plaintiff's circumstances, finds that the allegations as pled do not arise to the "incapacitation" required for equitable tolling based on mental disability. First, Plaintiff argues that he did not understand his rights and the need to timely file, due to "develop[ing] 'fixed beliefs' that rendered him unable to understand his rights and the need to timely file his complaint." (Plf.'s Opp'n at 9; *see also* FAC ¶¶ 22-23, 30, 38, 62.) In other words, between August 2003 and June 2014, Plaintiff believed Defendant Young was the "ultimate authority" regarding his academic coursework, that Defendant Young had no obligation to accommodate him, and that he had to complete Defendant Young's courses on Defendant Young's terms. (Plf.'s Opp'n at 9-10; *see also* FAC ¶¶ 13, 22, 30, 62-63.) Plaintiff asserts that these facts are similar to that in *Forbess*. (Plf.'s Opp'n at 10.)

The Court disagrees. In *Forbess*, the Ninth Circuit emphasized that the plaintiff's peculiar mental illness meant that the plaintiff did not understand that he needed to file a habeas petition, to the point that even if he had understood his legal rights completely, he would still not have filed because he believed that the FBI would release him as soon as his ex-wife was captured. 749 F.3d at 841. Here, in contrast, it appears that based on the complaint allegations, Plaintiff was informed of his legal rights in June 2014, when Plaintiff's doctor diagnosed him with PTSD and told him

13

that "Defendant Young's behavior was reprehensible and that [Plaintiff] had rights as a disabled person." (FAC ¶ 63.) Approximately two months later, Plaintiff began to pursue his rights by going to SJSU and seeking a letter of apology, and approximately four months later, he submitted his claim to SJSU. In other words, this is not a situation where Plaintiff's beliefs were such that he would not have pursued his rights even if he understood them; the allegations demonstrate that Plaintiff did in fact pursue his rights once he understood them.

At the hearing, Plaintiff, for the first time, explained that in alleging his fixed beliefs regarding Defendant Young having the ultimate authority regarding his major and no obligation to accommodate him, Plaintiff was attempting to allege that those fixed beliefs were such that even if someone had told him he could file a lawsuit, he would not have done so because he would not have been capable of believing it, due to his mental disability. Those fixed beliefs developed in 2003 and lasted until 2014, and made Plaintiff believe -- irrationally -- that there was nothing he could do about Defendant Young.

Plaintiff's assertions at the hearing make this case more comparable to *Forbess*, where the nature of the habeas plaintiff's delusions rendered him unable to file a lawsuit, even if he was informed of his legal rights. The problem, however, is that the allegations regarding Plaintiff's fixed beliefs and how it affected his ability to file a lawsuit are not in the complaint; the complaint refers to Plaintiff's fixed beliefs, but does not connect it to his alleged inability to file a timely suit. Thus, Plaintiff has failed to provide adequate notice, although an amended complaint alleging what was stated at the hearing would likely survive Rule 12(b)(6).

In the alternative, Plaintiff asserts that his mental disability incapacitated him to the point that he was unable to prepare and file a complaint. (Plf.'s Opp'n at 10.) In support, Plaintiff points to his inability to function at school, requiring him to take a medical leave of absence. (*Id.* at 11.) Again, the Court disagrees. While Plaintiff's disability and distress prevented him from no longer being able to attend school, Plaintiff does not assert that these symptoms resulted in him being "completely psychiatrically disabled during the relevant limitation period," as was the case in *Stoll*. 165 F.3d at 1242. Indeed, Plaintiff's allegations suggest that Plaintiff was able to function, as Plaintiff alleges that he continues to suffer the symptoms of his cumulative distress from his

14

interactions with Defendant Young. Despite those symptoms, Plaintiff has since been able to file the instant suit and his state action, including defending against at least two motions to dismiss.

Because the Court finds that Plaintiff has not pled adequate facts demonstrating equitable tolling based on mental incapacity, the Court GRANTS Defendants' motion to dismiss the claims that fall outside of the statute of limitation. Plaintiff, however, is granted leave to amend his complaint to explain how his fixed beliefs impacted his ability to file his lawsuit.[4]

### b. Notice of the Filing Period

In the alternative, Plaintiff asserts that he is entitled to tolling of any claims based on his ineligibility for SJSU's engineering program because he did not learn of his disqualification until the April 23, 2014 meeting with Defendant Young, when Defendant Young told him he was not eligible for the engineering program. (FAC ¶ 58.) (Plf.'s Opp'n at 11; *see also* FAC ¶¶ 67, 69.) It is not clear when Plaintiff was actually deemed academically ineligible for the engineering program.

At the hearing, Defendants stated that this claim was not part of the motion because Plaintiff did not learn of his academic ineligibility for the engineering program until the April 23, 2014 meeting, which is within the statute of limitations even absent equitable tolling. Thus, to the extent any claims are based on Plaintiff being deemed academically ineligible and/or disqualified from the engineering program, these claims are not subject to the instant motion to dismiss.

### ii. California Tort Claims Act and Timely Presentment

The parties next dispute whether equitable tolling based on mental incapacity applies to toll the period in which a tort claim must be presented to the government. (Defs.' Mot. at 13; Plf.'s Opp'n at 12-13; Defs.' Reply at 7-8.) Plaintiff contends that equitable tolling does apply to the presentment period, while Defendants argue that California Code of Civil Procedure § 352(b) states that tolling based on the lack of legal capacity to make decisions does not apply to actions

---

[4] Assuming Plaintiff is able to amend his complaint, these allegations would likely satisfy an equitable tolling argument at the motion to dismiss stage. Whether or not Plaintiff's fixed beliefs actually were of a nature to prevent him from filing a lawsuit even if he was informed of his legal rights would likely need to be proven by medical evidence, including his medical records and testimony by his case workers and medical providers.

brought against a public entity or public employee. (Plf.'s Opp'n at 12-13; Defs.' Reply at 7-8.) Because the Court finds that Plaintiff has not adequately pled facts demonstrating that equitable tolling based on mental incapacity applies in this case, the Court need not decide whether equitable tolling applies to the period in which a tort claim must be presented to the government.

### iii. Intentional Infliction of Emotional Distress

Defendants argue that the IIED claim against Defendant CSU must be dismissed because California Government Code § 815 states that "[e]xcept as otherwise provided by statute[, a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity of a public employee or any other person." (Defs.' Mot. at 14.) Plaintiff does not dispute that he cannot bring an IIED claim against Defendant CSU directly, but responds that his IIED claim is based on vicarious liability, not direct liability. (Plf.'s Opp'n at 13.) In support, Plaintiff points to California Government Code § 815.2(a), which states in relevant part that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of employment." *See de Villers v. Cty. of San Diego*, 156 Cal. App. 4th 238, 249 (2007) (citing to § 815.2(a) in explaining that "[w]hen the employer is a governmental agency, the statutory framework permits the injured party to pursue the *vicarious* liability theory in accordance with" the responsible tortfeasor-employee "acting within the course and scope of his or her employment"); *Rojas v. Sonoma Cty.*, Case No. 11-cv-1358-EMC, 2011 WL 5024551, at *6 (N.D. Cal. Oct. 21, 2011) (applying § 815.2(a) and denying motion to dismiss an IIED claim).

Defendants do not argue that Defendant CSU could not be held liable under a vicarious liability theory. (*See* Defs.' Reply at 9.) Instead, Defendants correctly point out that the complaint does not allege that Defendant CSU is liable for IIED based on vicarious liability. (Defs.' Reply at 9.) Instead, the complaint states that "Defendant CSU and Defendant Young's actions and inactions as alleged herein constitute extreme and outrageous conduct having no place in civil society," before referring generally to "Defendants' actions." (FAC ¶ 126; *see also* FAC ¶¶ 127-129.) In short, the complaint premises the IIED claim based on the actions of Defendant CSU itself, signifying direct liability. At the hearing, however, Defendants stated that this was a

16

technical argument only, and that they did not object to Plaintiff amending the complaint to make clear that liability was being sought per § 815.2. Thus, the Court GRANTS the motion to dismiss the IIED claim against Defendant CSU, with leave to amend to allege that Defendant CSU is liable for the actions of Defendant Young under § 815.2.

### C. Motion to Strike

Finally, Defendants seek to strike Plaintiff's request for injunctive relief as an "immaterial" or "impertinent" matter, as well as all references to Dr. Allen's actions. (Defs.' Mot. at 14-17.)

Plaintiff responds that "a motion to strike is an improper procedural vehicle to attack Plaintiff's injunctive relief claims and allegations regarding Dr. Allen." (Plf.'s Opp'n at 15 (all caps omitted).) In *Whittlestone, Inc. v. Handi-Craft Co.*, the Ninth Circuit found that the district court had erred when it struck a claim for lost profits and consequential damages. 618 F.3d 970, 973 (9th Cir. 2010). The Ninth Circuit explained that the claim for lost profits and consequential damages did not fall into any of the five categories that could be stricken under Rule 12(f). *Id.* at 974. First, it was not an insufficient defense. Second, it was not redundant because "it d[id] not appear anywhere else in the complaint." *Id.* Third, it was not immaterial "because whether these damages are recoverable relates directly to the plaintiff's underlying claim for relief." *Id.* Fourth, it was not impertinent "because whether these damages are recoverable pertains directly to the harm being alleged." *Id.* Fifth, it was not scandalous, and the defendant had not suggested as much.

To the extent that the defendant asserted that the claim had to be stricken because such damages were precluded as a matter of law, the Ninth Circuit found that this should have been raised in a summary judgment motion or motion to dismiss, not a motion to strike. *Whittlestone, Inc.*, 618 F.3d at 975. To allow otherwise would be to "creat[e] redundancies within the Federal rules of Civil Procedure, because a Rule 12(b)(6) motion (or a motion for summary judgment at a later stage in the proceedings) already serves such a purpose." *Id.*; *see also id.* ("Rule 12(f) is neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint") (internal quotations omitted). Thus, the Ninth Circuit concluded that "Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded

17

as a matter of law." *Id.*

Courts in this Circuit have extended *Whittlestone* to motions to strike claims for injunctive relief. In *Grayson v. County of Marin*, the defendants argued that the plaintiff's request for injunctive relief should be stricken because the plaintiff could not point to a sufficiently real and immediate threat. Case No. 14-cv-5225-JST, 2015 WL 720830, at *2 (N.D. Cal. Feb. 18, 2015). The Court denied the motion to strike, explaining that the "[d]efendants cannot demonstrate that [the p]laintiff's prayer for relief may be stricken under Rule 12(f)." *Id.* Relying on *Whittlestone*, the district court found that the injunctive relief claim did not fall within any of the five categories articulated by Rule 12(f), and that "[a]lthough *Whittlestone* did not specifically address motions to strike requests for injunctive relief, the Court concludes that the Ninth Circuit's reasoning in *Whittlestone* extends to the prayer for relief at issue here." *Id.*; *see also McGuire v. Reconstruct Co, N.A.*, No. 2:11-cv-2787-KJM-CKD, 2013 WL 5883782, at *3 (E.D. Cal. Oct. 30, 2013) (relying on *Whittlestone* to deny a motion to strike any portion of the plaintiff's prayer for relief, including injunctive relief); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1195 (C.D. Cal. 2010) ("The Ninth Circuit's reasoning in *Whittlestone* applies with equal force to claims for injunctive relief").

In their reply, Defendants do not dispute that a motion to strike the injunctive relief request or allegations relating to Dr. Allen is improper; indeed, Defendants do not discuss their motion to strike at all. (*See* Defs.' Reply at 10 (requesting that the motion to dismiss be granted, with no reference to the motion to strike).) The Court finds that Defendants have failed to establish that Rule 12(f) applies here.

Defendants seek to strike Plaintiff's request for injunctive relief, on the ground that Plaintiff lacks standing because there is no threat of future injury. (Defs.' Mot. at 16.) Defendants' argument is similar to that in *Grayson*, in which the district court denied the motion to strike as improper. 2015 WL 720830, at *2. While Defendants argue that Plaintiff is not entitled to injunctive relief, Defendants do not demonstrate that the prayer for injunctive relief is immaterial, *i.e.*, "has no essential or important relationship to the claim for relief." *Fogerty*, 984 F.2d at 1527. The injunctive relief request is directly related to Plaintiff's underlying claim for relief, which

concern both Defendant Young's behavior towards him and Defendant CSU's role in disqualifying him. Defendants also do not demonstrate that the prayer for injunctive relief is impertinent, *i.e.*, "consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* Again, the injunctive relief request is directly related to Plaintiff's claims of harm.

Likewise, Defendants do not demonstrate that the allegations regarding Dr. Allen should be stricken under Rule 12(f). Defendants contend that the allegations regarding Dr. Allen should be stricken because the Court ruled that Dr. Allen's actions or inactions were not wrongful conduct that support a fraudulent concealment claim. (Defs.' Mot. at 17.) This does not mean that Dr. Allen's actions are completely irrelevant to the case at hand; even if Plaintiff does not bring claims against Dr. Allen personally, her actions still, at the very least, affected Plaintiff's mindset and his ability to pursue his claims. (*See* FAC ¶¶ 23-27, 29-30.) Thus, they are not immaterial or impertinent to the case.

Accordingly, the Court DENIES Defendants' motion to strike.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' motion to dismiss; the Court dismisses Plaintiff's claims that fall outside of the statute of limitations. Such claims do not encompass Plaintiff's alleged academic ineligibility and/or disqualification from SJSU's engineering program, as Defendants stated that such claims were not part of the instant motion to dismiss. Plaintiff may amend the complaint to: (1) explain the nature of Plaintiff's fixed beliefs, and how it affected his ability to timely file his lawsuit, and (2) to assert a claim for IIED based on vicarious liability, per § 815.2. Plaintiff has thirty (30) days from the date of this order to file a Fifth Amended Complaint which is consistent with this order.

The Court DENIES Defendants' motion to strike.

IT IS SO ORDERED.

Dated: May 4, 2018

_____
KANDIS A. WESTMORE
United States Magistrate Judge

19